UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RICHARD SCHMIDT,

Plaintiff,

v.                          6:14-cv-62

C.R. BARD, INC. and DAVOL, INC.,

Defendants.

## ORDER

### I. INTRODUCTION

C.R. Bard, Inc. and Davol, Inc. ("Defendants") have moved to dismiss Plaintiff Richard Schmidt's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13 at 1. In the alternative, Defendants have moved to strike Plaintiff's request for punitive damages. *Id.*

For the reasons set forth below, the Court ***DENIES*** Defendants' motion to dismiss and Defendants' motion to strike Plaintiff's prayer for punitive damages.

### II. BACKGROUND

On July 12, 2005, Plaintiff underwent a hernia repair surgery in Michigan during which his surgeon implanted him with a Bard Mesh PerFix™ Plug ("Plug"), a product that Defendants designed, manufactured, and sold. ECF No. 1 at 2. Subsequently, Plaintiff suffered severe pain and permanent bodily injuries. *Id.* at 3. As a result of these injuries, on September 14, 2011, Plaintiff had to have the Plug surgically removed at Georgia Regional Medical Center in Bulloch County, Georgia. *Id.* Plaintiff alleges that his injuries were the result of the Plug's defective design. *Id.* In support of this allegation, Plaintiff has listed at least nine alleged defects in the Plug's design. *Id.* at 3-4. Additionally, Plaintiff alleges that Defendants were aware of these defects, failed to warn Plaintiff's physicians of the risks associated with the defects, and even represented that the Plug was safe in order to sell their product. *Id.* at 4-5.

On June 13, 2014, based on these factual allegations, Plaintiff filed his Complaint in this case advancing claims of negligence, strict liability defective design, failure to warn, and breach of warranty. *Id.* at 7-13. Plaintiff's Complaint also seeks punitive damages. *Id.* at 14. Plaintiff has since abandoned his breach of warranty claim. ECF No. 11 at 9.

### III. STANDARD OF REVIEW

In considering a Federal Rule of Civil Procedure 12(b)(6) motion, all facts in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court, however, is not limited to the four corners of the pleadings, rather a proper review of a motion to dismiss "requires the reviewing court to draw on its judicial experience and common sense." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see*

*Iqbal*, 556 U.S. at 678 (claim must have "facial plausibility"); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Yet, "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original).

In *Iqbal*, the Court further explained the required level of specificity:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

556 U.S. at 678 (internal citation and quotation omitted).

In order to assess the plausibility of a complaint, a court must be mindful of two principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Thus, *Iqbal* suggests a "two-pronged approach" to assessing a defendant's Rule 12(b)(6) motion: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679)). Importantly, however, the "plausibility standard is not akin to a 'probability requirement' at the pleading stage." *Id.* at 1289. Instead, it "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements" of a plaintiff's claim for relief. *See McCray v. Potter*, 263 F. App'x 771, 773 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## IV. ANALYSIS

Defendants have moved to dismiss Plaintiff's Complaint on the grounds that it fails to state a claim under both strict liability and negligence theories of recovery. ECF No. 10 at 6, 11.

### A. Choice of Law

As a preliminary matter, the Court must identify which state's laws apply in assessing Defendants' motion to dismiss. Defendants have argued that "Plaintiff's failure to plead a factual basis to support his claims . . . makes it nearly impossible to determine what state law should apply." *Id.* at 6. "In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006). "Conflict of laws issues in tort cases brought in Georgia are governed by the rule of lex loci delicti, which requires application of the substantive law of the place where the tort or wrong occurred." *Carroll Fulmer Logistics Corp. v. Hines*, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011).

2

In response to Defendants' arguments regarding uncertainty as to the law applicable to this action, Plaintiff asserts his injuries occurred while he was a resident of Georgia, "long after the implant" in Michigan. ECF No. 11 at 5. Mindful that the Court's task at the motion to dismiss stage is not limited to the four corners of the complaint, but instead is an exercise in common sense, *see Iqbal*, 556 U.S. at 679, the Court finds that Plaintiff's Complaint supports this argument. Plaintiff's Plug was implanted on July 12, 2005, in Michigan, and it was not until September 14, 2011, in Georgia, that Plaintiff's injuries caused him to have the implant removed. ECF No. 1 at 2-3. It would be unreasonable to think that a substantial amount of Plaintiff's injuries occurred in Michigan over the course of a period longer than six years before Plaintiff moved to Georgia and had surgery to remove the Plug. Rather, common sense compels the conclusion that at least a substantial amount, if not all, of the injuries allegedly caused by the Plug's alleged defects occurred in Georgia. Therefore, because "the last event . . . necessary to make [Defendants] liable for the alleged tort[s]" likely occurred in Georgia, the Court applies Georgia law in assessing Defendants' motion to dismiss. *See Panik v. Dunes Vill. Props., LLC*, 744 S.E.2d 900, 902 (Ga. Ct. App. 2013) (quotation omitted).

### B. Plaintiff Has Sufficiently Pled His Strict Liability Design Defect Claim Under Georgia Law

Under Georgia law, "'strict liability is imposed for injuries suffered because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained.'" *Hall v. Scott USA, Ltd.*, 400 S.E.2d 700, 703 (Ga. Ct. App. 1990) (emphasis omitted) (quoting *Talley v. City Tank Corp.*, 729 S.E.2d 264, 269 (Ga. Ct. App. 1981)) (internal quotation marks omitted). In order to establish a prima facie case for strict products liability in Georgia, a plaintiff must show that (1) the defendant was a manufacturer; (2) the defendant sold a defective product; and (3) the product's defects were the proximate cause of plaintiff's injuries. *See* O.C.G.A. § 51-1-11(b)(1). A design defect is a legal conclusion that a court arrives at by utilizing "a balancing test whereby the risks inherent in a product design are weighed against the utility or benefit derived from the product." *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673 (Ga. 1994). This test "incorporates the concept of 'reasonableness.'" *Id.* Thus, the risk-utility analysis encompasses a variety of factors applicable in different factual scenarios, not one of which is dispositive. *See Ogletree v. Navistar Int'l Transp. Corp.*, 500 S.E.2d 570, 571 (Ga. 1998); *see also Raymond v. Amada Co., Ltd.*, 925 F. Supp. 1572, 1578 (N.D. Ga. 1996) ("Consistent with the mandate to weigh the product's risk against its utility, facts impinging upon that risk are not dispositive but are to be balanced with other factors against the benefit derived from the product.").

Defendants argue that Plaintiff has failed to state a strict liability design defect claim because Plaintiff has failed to allege any defects specific to his Plug and, therefore, no reasonable inferences regarding causation can be drawn. ECF No. 10 at 7. Further,

3

Defendants argue, Plaintiff's design defect claim must "fail[] because he alleges no safer alternative by which [Defendants] may have designed the Bard PerFix™ Plug." *Id.* at 8. Defendants' arguments, however, misconceive what Plaintiff must plead to weather a Rule 12(b)(6) motion and what Georgia's risk-utility analysis requires. For the following reasons, Defendants' motion to dismiss Plaintiff's design defect claim fails.

First, Defendants' contention that Plaintiff must identify a specific design defect present in his particular Plug asks too much of Plaintiff at this stage in litigation. Contrary to Defendants' argument that Plaintiff's Complaint is silent as to design defects, *id.*, the Complaint lists at least nine specific alleged design defects. *See* ECF No. 1 at 11-12. Thus, this is not a situation where, as Defendant contends, the Complaint is so completely devoid of reference to a design defect that "it is impossible to draw any reasonable inference that a design defect caused plaintiff's injuries." ECF No. 10 at 7.

To be sure, a bald assertion that the Plug was defective in design when it left Defendants' hands, was unreasonably dangerous, and the foreseeable risks outweighed the Plug's benefits would be insufficient to survive a motion to dismiss. *See, e.g., Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1344-45 (N.D. Ga. 2012). But Plaintiff has done much more here. He has alleged a litany of specific defects, any one of which reasonably could have caused the injuries he complains of. *See* ECF No. 1 at 11-12. At this stage of the proceedings, when "[t]he very nature of a products liability action" makes it not obvious which of many alleged defects might have caused Plaintiff's injury, Plaintiff may set out various alternative or hypothetical sources of his injury. *See Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605 (11th Cir. 2008) (citing Fed. R. Civ. P. 8(d)(2)). "Nothing in Rule 8(a), *Twombly*, *Iqbal*, or any other binding precedent requires a plaintiff to specifically plead facts that establish every element (e.g., causation) in order to state a claim." *Edwards v. Wis. Pharmacal Co.*, 987 F. Supp. 2d 1340, 1345-46 (N.D. Ga. 2013).

What is required, under both Georgia law and the Federal Rules of Civil Procedure, is an allegation of specific design defects from which the Court can draw a reasonable inference that at least one of the defects caused Plaintiff's injuries. *Cf. Coney v. Mylan Pharm., Inc.*, 2012 WL 170143, at *6 (S.D. Ga. Jan. 19, 2012) (dismissing plaintiff's claims because he failed to assert any specific defects from which the court could draw a reasonable inference of causation). Plaintiff has satisfied that requirement here.

Second, Defendants' focus on Plaintiff's failure to allege a "safer alternative by which Bard may have designed the" Plug is misplaced. *See* ECF No. 10 at 8. At the outset, the Court notes that, contrary to Defendants' argument, Plaintiff has indeed identified a safer, equally-effective alternative design to the Plug. Plaintiff's Complaint alleges that the Plug's design is defective because the risks associated with the design do not outweigh its benefits because "the risk of recurrence of the hernia is no better than with native tissue repairs

4

and other hernia repair procedures." *See* ECF No. 1 at 5.

Notwithstanding Plaintiff's allegation of a safer alternative to the Plug, at this point in the proceedings Plaintiff need not establish that the Plug was indeed defective, he merely must set forth sufficient facts from which the Court can reasonably infer that the design was defective. *See Frazier v. Mylan Inc.*, 911 F. Supp. 2d 1285, 1297 (N.D. Ga. 2012). To be sure, in Georgia "[t]he 'heart' of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one." *Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 103 (Ga. 2001) (citing *Banks*, 450 S.E.2d at 674). "However, although *Banks* identifies the existence of an alternative design as one factor affecting the risk-utility analysis, it does not indicate that such fact is controlling." *Bodymasters Sports Indus., Inc. v. Wimberley*, 501 S.E. 2d 556, 560 (Ga. Ct. App. 1998); *see Timmons v. Ford Motor Co.*, 982 F. Supp. 1475, 1479 (S.D. Ga. 1997) ("Although the Georgia Supreme Court placed great emphasis on alternative designs, alternatives are not the sole factor."); *see also Volkswagen of Am., Inc. v. Gentry*, 564 S.E.2d 733, 741 (Ga. Ct. App. 2002) (finding "no error in the trial court's failure to charge that [Plaintiffs] had to offer proof of an alternative, safer design, practicable under the circumstances"). Thus, although the existence of an alternative design is an important factor, there is no talismanic requirement that Plaintiff allege and prove that there was a safer feasible alternative design. *See Raymond*, 925 F. Supp. at 1578.

The burden ultimately will be on Plaintiff to present evidence that the risks of the Plug's design outweigh the benefits of that design. *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1361 (N.D. Ga. 1999). But the determination of whether or not the Plug is defective under Georgia's risk-utility analysis generally is a question for the jury. *See Bryant v. Hoffman-La Roche, Inc.*, 585 S.E.2d 723, 730 (Ga. Ct. App. 2003). Accordingly, at this early stage of the proceedings it would be improper for the Court to require Plaintiff to do more than he has done here—i.e., set forth factual allegations from which the Court can draw a reasonable inference that the Plug was defectively designed. *See cf. Bryant v. BGHA, Inc.*, ___ F. Supp. 2d ___, 2014 WL 1271689, at *4 (M.D. Ga. Mar. 27, 2014) (even "[t]o prevail at summary judgment, a defendant must 'show plainly and indisputably an absence of *any* evidence that a product as designed is defective.'" (quoting *Ogletree*, 522 S.E. 2d at 470)). As such, the Court finds that Plaintiff has sufficiently pled that the Plug was defectively designed.

The Court finds that Plaintiff has set forth a sufficient factual basis to raise a reasonable expectation that discovery will reveal evidence regarding which, if any, of the alleged defects caused Plaintiff's injuries. *See McCray*, 263 F. App'x at 773. Therefore, Defendants' motion to dismiss Plaintiff's strict liability design defect claim is denied.

## C. Plaintiff Has Sufficiently Pled His Failure to Warn Claim[1]

Under Georgia law, "[i]n standard products liability cases premised on a failure to warn, Georgia law insists that a plaintiff show that the defendant had a duty to warn, that the defendant breached that duty, and that the breach proximately caused the plaintiff's injury." *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). "[T]he duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994). "This duty may be breached by (1) failing to adequately communicate the warning to the ultimate user or (2) failing to provide an adequate warning of the product's potential risks." *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994). However, a manufacturer of medical devices does not have a duty to warn ultimate users of the dangers associated with its product. Rather, a medical device manufacturer "has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer." *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003).

Defendants argue that Plaintiff has failed to state a claim for strict liability failure to warn, because Plaintiff merely alleges that the warnings, if any, provided to Plaintiffs' doctors were inadequate and because Plaintiff fails to identify any warning provided to Plaintiff's physician or its inadequacy. ECF No. 10 at 10 (citing ECF No. 1 at 12). However, reading Plaintiff's Complaint holistically, the Court finds that Plaintiff has sufficiently pled his failure to warn claim.

Plaintiff first alleges that prior to the time that his Plug was implanted in him, "Defendants were aware of or should have been aware of" at least nine specific defects. *See* ECF No. 1 at 5. While this allegation is not included under "Count II" of Plaintiff's Complaint but is included instead under his "Factual Allegations," "the Court cannot ignore the prior allegation[] . . . even if [it is] not reiterated under 'Count [II].'" *See Wiggins v. McHugh*, 2010 WL 1640968, at *3 (S.D. Ga. Apr. 22, 2010). Plaintiff further alleges that Defendants failed to warn his healthcare providers of those risks and, that "[h]ad Defendants adequately warned Plaintiff's healthcare providers of the risks associated with the [Plug], the healthcare providers acting as reasonably prudent healthcare providers would have elected not to use the [Plug] to repair [his] hernia." ECF No. 1 at 12. Finally, Plaintiff alleges that as a result of Defendants' failure to warn, "Plaintiff suffered serious bodily injuries." *Id.* at 12.

Despite the fact that Plaintiff has not identified the specific inadequate warnings as of yet, the Court finds that these allegations "provide sufficient factual detail to state a plausible failure to warn claim." *See Henderson v. Sun Pharm. Indus., Ltd.*, 2011 WL 4024656, at *4 (N.D. Ga. June 9,

---

[1] Although Plaintiff styles his failure to warn claim as a strict liability claim, failure to warn under Georgia law is "based on a negligence theory of product liability." *Mack Trucks, Inc. v. Conkle*, 436 S.E.2d 635, 637 (Ga. 1993). Therefore, the Court treats Plaintiff's failure to warn as a claim for negligent failure to warn.

6

2011) (denying a motion to dismiss a failure to warn claim founded on similar factual allegations). Therefore, the Court denies Defendants' motion to dismiss Plaintiff's failure to warn claim.

### D. Plaintiff Has Sufficiently Pled His Negligence Claim Based on Design Defect

Plaintiff's Complaint purports to advance negligence claims premised on both negligent design and negligent manufacture. ECF No. 1 at 7. But under Georgia law, "[a] manufacturing defect is a defect that is 'measurable against a built-in objective standard or norm of proper manufacture.'" *Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002) (quoting *Banks*, 450 S.E.2d at 673 n. 2). Plaintiff has provided no factual basis from which the Court can reasonably infer that the Plug implanted in him deviated from the Defendants' otherwise proper manufacturing specifications. *See id.* Therefore, Plaintiff cannot advance negligence claims predicated on alleged manufacturing defects. *See Miller v. Ford Motor Co.*, 653 S.E.2d 82, 84 (Ga. Ct. App. 2007) ("In order to establish a negligent manufacturing claim, the plaintiff must come forward with evidence that . . . there was a defect in the product when it left the manufacturer . . . .").

With regard to Plaintiff's negligence claims predicated on alleged design defects, both negligence and design defect "claims use the same risk-utility analysis, and therefore will be treated as one claim." *Frazier*, 911 F. Supp. 2d at 1299-1300 (citing *Kelley v. Hedwin Corp.*, 707 S.E.2d 895, 898-901). Accordingly, Defendants' motion to dismiss Plaintiff's negligence claim is denied and the Court will consolidate Plaintiff's negligence and design defect claims under one count.

### E. Defendants' Motion to Strike

Federal Rule of Civil Procedure 12(f) allows the Court on its own, or on motion by either party, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

> Motions to strike are disfavored and will be denied unless the pleading sought to be stricken is clearly insufficient as a matter of law. Generally, a court will not exercise its discretion to strike "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."

*Knous v. United States*, 981 F. Supp. 2d 1365, 1366-67 (N.D. Ga. 2013) (citation omitted) (quoting *Bank of the Ozarks v. Khan*, 903 F. Supp. 2d 1370, 1376 (N.D. Ga. 2012)).

Defendants have moved the Court to strike Plaintiff's prayer for punitive damages, though they seem to conflate the standard for a motion to dismiss with the standard for a motion to strike. ECF No. 10 at 17-18 (asking the Court to strike Plaintiff's request for punitive damages, but applying *Iqbal*'s motion to dismiss standard).

A survey of relevant case law and commentary leads the Court to the conclusion that striking a prayer for relief

7

pursuant to a Rule 12(f) motion is proper only where the relief requested is not available as a matter of law. *See, e.g., Hodge v. Orlando Utils. Comm'n*, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009) ("[A] prayer for relief not available under the applicable law is properly subject to a motion to strike."); *Baldwin v. Peake*, 2009 WL 1911040, at *1 (W.D. Pa. July 1, 2009) (concluding "that where a claim for relief is precluded by law . . . a motion to strike is a proper method for narrowing the damages aspect of the case"); *Rokosik v. City of Chi., Dept. of Police*, 1999 WL 966098, at *2-3 (N.D. Ill. Oct. 13, 1999) (striking prayer for compensatory damages as unrecoverable under the ADEA); *Erhard v. Local Union Co. No. 604*, 914 F. Supp. 954, 956 (W.D.N.Y. 1996) ("[T]he Court may strike plaintiff's demand for punitive damages as immaterial or impertinent only if punitive damages are not recoverable . . . in this type of action."); *see also* 2 Moore's Federal Practice § 12.37[3], at 12-130 (3d ed. 2011) ("[M]otions to strike requests for certain types of relief, such as punitive . . . damages, are generally granted if such relief is not recoverable under the applicable law."). But Defendants here do not argue that punitive damages are not available for the claims stated in Plaintiff's Complaint. Rather, they challenge the factual basis of Plaintiff's prayer for punitive damages. ECF No. 10 at 18. However, "[t]he absence of allegations supporting a particular theory of recovery should not provide grounds for striking a claim." Moore's Federal Practice, *supra*, § 12.37[3], at 12-130; *see also Hutchings v. Fed. Ins. Co.*, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008) (concluding that

Rule 12(f) motions are "not intended to 'procure the dismissal of all or part of a complaint." (quoting *Rockholt v. United Van Lines*, 697 F. Supp. 383, 386 (D. Idaho 1988))).

In such situations, a number of courts have concluded, either expressly or impliedly, that a Rule 12(b)(6) motion is the proper vehicle for challenging the sufficiency of a prayer for relief. *See, e.g., Taylor v. MillerCoors, LLC*, 2014 WL 4179918, at *1 (M.D. Ga. Aug. 20, 2014) (granting, without comment as to propriety, motions to dismiss plaintiff's claim for punitive damages); *Pate v. Winn-Dixie Stores, Inc.*, 2014 WL 895610, at *2 (S.D. Ga. Mar. 6, 2014) (Wood, C.J.) (treating, without comment, defendant's request to strike plaintiff's prayer for punitive damages as a motion to dismiss prayer); *Kelley v. Corrs. Corp. of Am.*, 750 F. Supp. 2d 1132, 1148 (E.D. Cal. 2010) ("Defendant's motion to strike Plaintiff's claims for punitive damages pursuant to Rule 12(f) is construed by the court to be a motion to dismiss pursuant to Rule 12(b)(6)."); *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, 2007 WL 2900332, at *8 (N.D. Fla. 2007) ("Defendant's motion to strike is more properly characterized as a motion to dismiss and shall be treated as such."); *Lahey v. JM Mortg. Servs., Inc.*, 2000 WL 420851, at *7 (N.D. Ill. Apr. 18, 2000) ("[T]he correct Rule under which a defendant asserts that a plaintiff is not entitled to punitive damages[] is Rule 12(b)(6).") However, a fresh review of cases on point convince the Court that subjecting Plaintiff's prayer for relief to

8

dismissal pursuant to a Rule 12(b)(6) motion is improper.

"It is clear . . . that a request for punitive damages is not a 'claim' within the meaning of [Federal Rule of Civil Procedure] 8(a)(2); it is only part of the relief prayed for in a claim." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1297 (11th Cir. 1999), *vacated in part on other grounds by* 204 F.3d 1069 (11th Cir. 2000); *see also Bowden v. City of Franklin, Ky.*, 13 F. App'x 266, 276 (6th Cir. 2001) ("Count VI is not a claim for relief but a request for punitive damages."). "[A] plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety." *Janis v. Nelson*, 2009 WL 4505935, at *7 (D.S.D. Nov. 24, 2009). To be sure, the requested relief is irrelevant to a court's determination as to whether or not a plaintiff has stated a claim for relief for purposes of Federal Rule of Civil Procedure 8(a)(2). Whether a claim for relief should be dismissed under Rule 12(b)(6) "turns not on 'whether [a plaintiff] has asked for the proper remedy but whether he is entitled to *any* remedy.'" *See City of Los Angeles v. Lyons*, 461 U.S. 95, 130 (1983) (quoting Wright & Miller, Federal Practice and Procedure § 1664). It follows then that Rule 12(b)(6), a vehicle for testing whether a plaintiff is entitled to relief, *see Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009), is an improper vehicle for challenging the sufficiency of a prayer for relief, which is merely part of the relief sought. Accordingly, "punitive damages is not a 'cause of action' subject to dismissal under Rule 12(b)(6)." *Rathbone v. Haywood Cnty.*, 2008 WL 2789770, at *1 (W.D.N.C. July 17, 2008) (treating motion to dismiss a prayer for punitive damages as a motion to strike and ultimately striking the prayer as unrecoverable as a matter of law). As such, the Court disagrees with Defendants' contention that *Iqbal*'s standards governing statements of claims mandates dismissal of Plaintiff's prayer for punitive damages. *See* ECF No. 10 at 18.

Therefore, Plaintiff's request for punitive damages is subject neither to dismissal nor striking.

This is not to say, however, that Defendants are not entitled to know the facts supporting Plaintiff's demand for punitive damages. *See Apex Solutions of Cincinnati LLC v. Apex Energy Solutions of Ind., LLC*, 2010 WL 4642902, at *9 (S.D. Ohio Nov. 9, 2010). Indeed, Georgia law requires "[a]n award of punitive damages [to] be specifically prayed for in the complaint." O.C.G.A. § 51-12-5.1(d)(1). Under this statute, a lone statement in the prayer that plaintiff be awarded punitive damages is insufficient. *Drug Emporium, Inc. v. Peaks*, 488 S.E.2d 500, 507 (Ga. Ct. App. 1997). However, when a specific prayer for punitive damages is coupled with allegations in the body of the Complaint that are sufficient to support an award of punitive damages under O.C.G.A. § 51-12-5.1(b), the requirements of O.C.G.A. § 51-12-5.1(d)(1) are met. *See K-Mart Corp. v. Hackett*, 514 S.E.2d 884, 889 (Ga. Ct. App. 1999). Here, in addition to specifically requesting punitive damages in his prayer for relief, Plaintiff alleges in the body of his Complaint that Defendants knew of the Plug's defects, knew of the dangerous nature of the defects, and still represented that the Plug was safe. ECF No. 1 at 5. Such

conduct, if proven to be true, would constitute willful misconduct warranting punitive damages under O.C.G.A. § 51-12-5.1.

Whether discovery will reveal facts sufficient to carry Plaintiff's burden of proving his entitlement to punitive damages by clear and convincing evidence is yet to be seen, *see* O.C.G.A. § 51-12-5.1(b), but he has shown enough to satisfy O.C.G.A. § 51-12-5.1(d)(1)'s requirement that punitive damages be specifically prayed. Therefore, Defendants' motion regarding Plaintiff's punitive damages request is denied.

## V. CONCLUSION

Because the Court finds that Plaintiff has stated claims for relief under Georgia law for strict liability design defect, negligent failure to warn, and negligence, the Court ***DENIES*** Defendants' motion to dismiss. Further, because the Court finds that Plaintiff has satisfied O.C.G.A. § 51-12-5.1(d)(1)'s requirement that awards of punitive damages be specifically prayed, the Court ***DENIES*** Defendants' motion regarding Plaintiff's prayer for punitive damages.

This /4 day of October 2014.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA